IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BILLY W. ANDERSON, #183 981, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. : 2:10-CV-693-TMH |
| ) | [WO] |
| RICHARD ALLEN, PRISON ) | |
| COMMISSIONER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, an inmate currently housed at the Draper Correctional Facility in Elmore, Alabama, filed this 42 U.S.C. § 1983 action seeking damages and injunctive relief. He complains that he has been denied appropriate medical care and treatment for a condition causing damage to his skull and possibly causing frontal lobe brain damage as indicated by issues he has with mood swings and problems sleeping. Plaintiff names as defendants to this cause of action Richard Allen, former Commissioner of the Alabama Department of Corrections; Correctional Medical Services, Inc. ["CMS"], the contract medical care provider for the Alabama prison system at the time of the challenged treatment; and Dr. Hugh Hood, a physician employed as the Associate Regional Medical Director for CMS.

Defendants filed special reports and supporting evidentiary materials addressing Plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat Defendants' reports as motions for summary judgment. This case is now pending on Defendants' motions for summary judgment. Upon consideration of these

motions, the evidentiary materials filed in support thereof and Plaintiff's responses in opposition to the motions, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims properly before this court. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
> 
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required

to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary

4

principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. Dr. Hood*

According to the complaint, the medical condition about which Plaintiff complains began in 2004. He describes the condition as one inflicting long term permanent damage because it has caused his skull "to concave, pushing [his] skull up against [his] brain possibly causing frontal lobe damage, gives [him] bad migraine headaches, vision problems, mood swings, and problems sleeping." Dr. Hood informed Plaintiff he would not receive the medical treatment he was seeking because the desired treatment is considered elective and withholding elective treatment would not cause Plaintiff's health to deteriorate or cause definite harm and/or permanent damage. Plaintiff claims, however, that a free world specialist advised both CMS and Dr. Hood that he (Plaintiff) needed surgery as soon as possible. (*Doc. No. 11 at pgs. 2-4*.)

Dr. Hood began his career as a physician in 1974 and is board certified in internal medicine. He serves as the Associate Regional Medical Director for CMS, the company which contracts to provide medical services to inmates in the custody of the Alabama

Department of Corrections.[2] Dr. Hood has reviewed Plaintiff's medical records and has personally examined and evaluated Plaintiff with regard to his concerns about the lesion on his forehead. (*Doc. No. 28, Hood Affidavit*.)

Dr. Hood states that at the time Plaintiff filed his complaint, the lesion had been present for approximately six years, during which time it has slowly enlarged. Diagnostic tests, including CT scans and x-rays, along with physical examinations by Dr. Hood and other medical providers, indicate that the lesion is non-malignant. The diagnosis for the lesion is that it is a lipoma.[3] Despite Plaintiff's complaints and concerns regarding the lesion, Dr. Hood asserts that its removal is not necessary to protect Plaintiff's health, conservative treatment measures are currently indicated, and surgical intervention at this time would be deemed elective. Dr. Hood affirms that Plaintiff will continue to receive medical evaluations of the lesion to ensure he receives the appropriate treatment for his condition which is non-life threatening. The physician further states that additional evaluations of Plaintiff's condition by outside medical consultants are not presently indicated. (*Doc. No. 28, Hood Affidavit and Plaintiff's Medical Records - Exhs. 1-6*.)

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing

---

[2] These designations were correct at the time the complaint and Defendants' dispositive motions were filed.

[3] A lipoma is a benign neoplasm of adipose tissue, composed of mature fat cells. Stedmans Medical Dictionary 229930 (27th ed. 2000).

medical treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, correctional officials or prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.

*See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.").

A correctional official or health care provider may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not 'respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80;

> *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious `harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The medical defendants' evidence demonstrates that prison medical personnel have monitored, evaluated, and treated Plaintiff with regard to his complaints stemming from the lesion on his forehead in accordance with their assessment of his condition and they continue to monitor and evaluate his condition. There is no indication in Plaintiff's medical records that he has been denied any necessary treatment or that he has suffered any injury or damage due to a denial or a deficiency in the provision of his medical care. (*Doc. No. 28, Plaintiff's Medical Records, Exhs. 1-6, Doc. No. 36, Plaintiff's Medical Records*.)

Although Plaintiff maintains that Defendants have failed to provide proper and adequate medical care and treatment for the lesion on his forehead, he fails to present any medical evidence establishing that Dr. Hood has in any way disregarded a substantial risk to his health. He complains that pressure build-up due to the lesion causes headaches, migraines, and pressure in his eyes for which he takes daily medication, but complains that it is not always effective and causes drowsiness, thereby interfering with his daily living. He further claims that proper treatment is being denied because he is an inmate and that corporate profits are put ahead of his health and well-being. Despite these broad assertions,

Plaintiff simply provides no evidence that the medical care and treatment rendered in regard to the condition about which he complains, and specifically from Dr. Hood, is inadequate, detrimental to his health and well-being, or reflective of any disregard by this doctor of a substantial risk of harm to Plaintiff's health. (*Doc. Nos. 71, 72*.)

Plaintiff also maintains that Dr. Hood, as an internist, is not qualified to deny the surgery which Plaintiff maintains is indicated for his condition. Nor, Plaintiff claims, is Dr. Hood qualified to deny the recommendation of a specialist who recommended surgical intervention for his condition. (*Doc. Nos. 71, 72*.) Plaintiff, however, has come forward with no significantly probative evidence which demonstrates that Defendant Hood has in any way disregarded a substantial risk to his health, nor has he alleged any attendant risk to his condition that rises to the level of a serious medical need. *See generally Estelle*, 429 U.S. at 104-05 (mere negligence in providing medical care is insufficient to violate the Constitution). That Plaintiff desired a different mode of treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505; *Hamm*, 774 F.2d 1567. In addition, whether correctional medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545. Finally, the mere fact that prison medical personnel and a consultation by a private physician differed in their opinions as to the appropriate course of treatment for Plaintiff's lesion/lipoma does not, without more, constitute deliberate indifference. (*See Doc. No. 36, Plaintiff's Medical*

10

*Records at pg. 17*.)  *See Garvin*, 236 F.3d at 898; *Hamm*, 774 F.2d at 1575.  Plaintiff has failed to present any evidence which indicates that Defendant Hood knows that the manner in which he has treated and is treating Plaintiff's lesion/lipoma creates a substantial risk to his health, but with this knowledge consciously disregards such risk.

This court has conducted a thorough and careful review of all the evidentiary materials submitted by Defendants.  From that review, the undersigned finds that Plaintiff has received adequate and appropriate medical care and treatment in connection with his medical complaint.  He has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure, nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. While unincarcerated individuals have the ability to choose whether or not they wish to undergo a medical procedure deemed elective  by a medical provider, the law is settled that "[s]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)  Thus, to the extent Plaintiff's claim is based upon his own disagreement with the prison medical staff about the course of his medical treatment, as noted, such claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm*,  774 F.2d. at 1575.

Finally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176,

1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Here, the court finds that no verifying evidence has been produced tending to establish any detrimental effect as a result of Dr. Hood's actions, or that Dr. Hood has in any way disregarded a substantial risk to Plaintiff's health by delaying medical services or medical care for him. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). While Plaintiff claims he has in "[his] possession medical documents that cannot be found in the medical files proving the Defendants Correctional Medical Services, Inc., and Hugh Hood, M.D. are in fact concealing evidence if they haven't already destroyed it," he has not submitted these documents to the court, nor has he described their content. Believing that Defendants would add these previously undisclosed documents back to his medical records "to prove [him] to have lied," Plaintiff has chosen not file these alleged undisclosed documents with the court. (*See Doc. No. 68 at pg. 2*.)

There is no dispute that Plaintiff has been, and continues to be, provided with appropriate medical care and treatment for his complaints associated with the lesion on his forehead. At best, Plaintiff provides nothing more than his unsubstantiated opinions about the quality of the medical care he received. His opinions are insufficient to create a genuine issue, and his failure to support his claims with medical or scientific evidence is fatal to them. No evidence exists tending to show that Defendant Hood has demonstrated deliberate indifference towards Plaintiff's medical needs by delaying or withholding necessary medical treatment, or by interfering with his ability to access any such necessary treatment. It appears

to the court that Plaintiff merely disagrees with the course of treatment he has received for his complaints related to the lipoma. As explained, however, such disagreements do not provide the framework for a federal complaint under 42 U.S.C. § 1983. *Hamm*, 774 F.2d at 1575; *Waldrop*, 871 F.2d at 1033. As the medical records before the court simply do not reflect that the medical care provided to Plaintiff was so egregious as to constitute an Eighth Amendment violation, it is clear that he has failed to establish deliberate indifference on the part of Defendant Hood. Summary judgment is, therefore, due to be granted in his favor.

*B. Correctional Medical Services, Inc.*

In contracting with the Alabama Department of Corrections to provide prison medical services, CMS is bound by the State's obligations to its prisoners under the Eighth Amendment. *West v. Atkins*, 487 U.S. 42, 54-58 (1988). However, under well-settled law, Plaintiff cannot predicate CMS's liability for the alleged constitutional violations in this case on a theory of *respondeat superior* nor may CMS be held responsible for the constitutional violations of its employees, but may only be held liable if its policies or procedures are unconstitutional or are the "moving force" behind the constitutional violation. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694-95, (1978); *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986); *accord Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir.) (finding that § 1983's municipality law is to be applied to a corporate medical provider).

Plaintiff has presented no evidence which would show that CMS was actually

involved in the constitutional deprivations about which he complains. Thus, CMS's liability must arise from another source. The analysis to be applied to the potential liability of CMS is the same as that applied to municipalities under the Supreme Court's decision in *Monell, supra.* Under *Monell*, in order to hold CMS liable for the deliberate indifference of its contract physicians and other medical personnel, Plaintiff must show that the doctors or other medical personnel, in providing constitutionally inadequate treatment to him, were implementing official CMS policy or unofficial customary practice.  *Monell*, 436 U.S. at 690-691. Additionally, as noted, before liability can be imposed, Plaintiff must show that the policy or custom was the root cause of the constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. at 820. Thus, it is clear that not only must there be some degree of "fault" on the part of CMS in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation. *Id*. at 823.

In the instant action, the court finds that, at best, Plaintiff does no more than attempt to assert that CMS contracted to provide medical services for inmates incarcerated in the ADOC and that it is the provider at the Draper Correctional Facility. (*Doc. No. 11*.) The complaint is devoid of any attempt to identify a policy or custom of CMS which caused the alleged constitutional violation. (*Id*.) Consequently, the court concludes that Plaintiff's complaint against CMS fails to state a claim upon which relief may be granted. Defendant CMS is, therefore, due to be granted summary judgment.

## C. *Defendant Allen*

Plaintiff maintains that Defendant Allen had the responsibility of ensuring that inmates in the ADOC received fair and proper medical care from the prison health care providers. He further maintains that Defendant Allen had responsibility for ensuring that the associate commissioner in charge of health care for the ADOC was properly overseeing the prison health care providers to make sure that they were providing proper and adequate medical care and services to inmates in the custody of the ADOC. (*Doc. Nos. 11, 71, 73*.)

It is clear from the pleadings filed in this case that Defendant Allen is not a health care professional and, as former Commissioner for the ADOC, did not make decisions regarding inmate medical care and treatment and did not attempt to intercede, overrule, or influence decisions made by medical personnel regarding inmate medical care. (*Doc. No. 39, Allen Affidavit*.) To the extent that Defendant Allen is named as a defendant solely due to his former supervisory position with the Alabama Department of Corrections, "[t]here is 'no *respondeat superior* liability for a § 1983 claim.' *Marsh [v. Butler County, Alabama*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*)]; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009). Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. *Id.* at 1059." *Salas v. Tillman*, 162 Fed.Appx. 918, 922 (11th Cir. 2006).

In a § 1983 action, supervisory liability "must be based on something more than a

theory of *respondeat superior*. To prevail on a § 1983 claim against a supervisory official, a plaintiff must show that the named defendant was actually involved in, or exercised control or direction over, the alleged constitution deprivation. *Iqbal*, 556 U.S. at 676-77 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* .... [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution .... [P]urpose rather than knowledge is required to impose [constitutional] liability on ... an official charged with violations arising from his or her superintendent responsibilities"); Thus, a supervisor in a § 1983 action may not be held liable solely on the basis of an employee's actions. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985) (equating the liability of a supervisor to that of a municipality); *see generally Monell,* 436 U.S. at 690-92 (discussing municipal liability). Liability may be imposed if a plaintiff shows a defendant either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing.");

*Dolihite v. Maughon,* 74 F.3d 1027, 1052 (11th Cir. 1996). The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995); *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). The law of this Circuit directs "'that the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation.' *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)." *Swint*, 51 F.3d at 999.

Plaintiff has presented no evidence sufficient to create a genuine issue of disputed fact with respect to Defendant Allen and the pending claims that health care personnel acted with deliberate indifference to his medical needs. There is nothing before the court which indicates that Defendant Allen personally participated in or had any direct involvement with the medical treatment provided to Plaintiff. Additionally, the undisputed evidentiary materials demonstrate that medical personnel made all decisions relative to the course of treatment provided to Plaintiff and further establish that such treatment did not result from a policy instituted by Defendant Allen. *See Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir.1993) (holding the prison commissioner's dismissal was proper because no personal involvement or policy by the department was alleged). The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the

medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See*, *e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993); *White v. Farrier,* 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala*., 198 Fed.Appx. 893, 897 (11th Cir. 2006).

Here, the court finds that Plaintiff has failed to present any support for his allegations against Defendant Allen. Specifically, Plaintiff offers no evidence that Defendant Allen had any personal involvement in the incidents about which he complains and there is nothing in the record which established the requisite causal connection between Defendant Allen and the alleged constitutional deprivations. Accordingly, Defendant Allen is entitled to summary judgment. *See Dolohite*, 74 F.3d at 1052.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (*Doc. Nos. 28, 39*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. This case be DISMISSED with prejudice

4. Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **May 31, 2013** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 17th day of May, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE